UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

CIVIL ACTION NO. 08-178-GWU

APRIL SPURLOCK,                                                                              PLAINTIFF,

VS.                            **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                                       DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI).  The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1.  Is the claimant currently engaged in substantial gainful activity?  If so, the claimant is not disabled and the claim is denied.

2.  If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities?  If not, a finding of non-disability is made and the claim is denied.

3.  The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed

1

08-178  April Spurlock

       in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.     At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.     If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

    Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

    One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician

2

than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

08-178  April Spurlock

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  <u>Harris v. Secretary of Health and Human Services</u>, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.  <u>Id.</u>  <u>Accord,</u> <u>Johnson v. Secretary of Health and Human Services</u>, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  <u>Gooch v. Secretary of Health and Human Services</u>, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, <u>Hale v. Secretary of Health and Human Services</u>, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work.  <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work.

4

Cf. <u>Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. <u>Id.</u> at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., <u>Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having

the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, April Spurlock, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of chronic back pain, a depressive disorder, and an anxiety disorder. (Tr. 17). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 19-24). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 38, high school education, and work experience as a cashier, stocker, and cook could perform any jobs if she were limited to "light" level exertion and also had the following non-exertional restrictions. She: (1) could occasionally climb, stoop, kneel, crouch, and crawl; (2) had a "moderately limited" ability to carry out detailed instructions, maintain attention and concentration for extended periods, interact appropriately with the general public and respond appropriately to changes in the work setting; and (3) was able to understand and remember simple instructions and procedures, sustain attention, concentration, and pace for simple tasks, interact adequately with peers and supervisors in a task-focused setting, and adapt to work demands and changes given reasonable support. (Tr. 491). The VE responded that there were jobs that such a person could perform and proceeded

to give the numbers in which they existed in the regional and national economies. (Tr. 491-2).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff does not challenge the ALJ's physical restrictions on appeal, choosing to focus on the mental evidence.  The plaintiff had alleged that her most serious problems were mental, and that they included a bipolar condition, depression, and anxiety.  (Tr. 473-4).  She stated that she was regularly taking her medications, although she had not done so in the past, but still had panic attacks and did not like to go out in public.  (Tr. 475).  She testified that she had had a panic attack a week prior to the hearing while with her grandmother in the hospital, but had not had an attack for about a month prior to this incident, and it had lasted only 15 minutes.  (Tr. 475-6).  She alleged poor concentration, but admitted she could read for 20 to 25 minutes.  (Tr. 480).  However, she did not feel she could concentrate at tasks even on a sedentary level job.  (Tr. 482).

Medical records in the transcript include treatment notes from the University of Kentucky Family Practice Clinic in Hazard, where the plaintiff was treated by a general osteopathic practitioner and a psychologist, Tamara Knox. Initially, she was treated for complaints of anxiety and depression, but after administering a Personality Assessment Inventory (PAI), Knox diagnosed major depression with psychotic features and post traumatic stress disorder.  (Tr. 278).  Later, she noted

08-178  April Spurlock

that the plaintiff's behavior was diagnostically consistent with a bipolar disorder, although she was somewhat unsure. (Tr. 254). The more recent notes in 2006 indicate that medication was helping, and on February 20, 2006, Dr. Knox stated that the plaintiff had a broad affect with a euthymic mood, and her attention and concentration appeared largely intact. (Tr. 252). Her insight and judgment were limited, however, and the patient described a rather solitary lifestyle with little inclination towards interacting with others. (Id.).

State agency psychologists reviewed the record in November, 2005 and June, 2006, and concluded that the plaintiff would have a "moderately limited" ability to carry out detailed instructions, maintain attention and concentration for extended periods, interact appropriately with the general public, and respond appropriately to changes in the work setting. (Tr. 366-7, 379-80). Psychologist Mary Thompson commented that while the plaintiff was being treated for major depressive disorder and post traumatic stress disorder, her thought processes were organized and she was able to relate with some people and complete simple tasks including housework, driving, and running errands as she was physically able to do so. She felt that there were significant restrictions present but they would not preclude some work activity. (Tr. 368). Psychologist Ilze Sillers affirmed Thompson's restrictions without further comment. (Tr. 381). It was noted that there was no medical source statement to address. (Tr. 368).

08-178  April Spurlock

Subsequently, Dr. Knox submitted a mental functional capacity assessment indicating that the plaintiff was "markedly limited" in many areas including attention and concentration, the ability to work with others, performing at a consistent pace, relating to the general public and coworkers, and accepting instructions and responding appropriately to criticism from supervisors. No explanation for these conclusions was provided, and the form was dated March 30, 2007. (Tr. 419-21). The most recent office note from Dr. Knox is dated March 20, 2006, at which time the psychologist had noted no evidence of delusions or hallucinations, and stated that her attention and concentration did not appear to be markedly impaired. (Tr. 251).

The ALJ rejected Dr. Knox's restrictions as "not supported by any objective findings and . . . based solely on the claimant's subjective complaints." (Tr. 22). He noted evidence in the transcript that she was able to socialize with friends and family, drive to Michigan to visit her cousins, and had a history of being non-compliant with treatment and medication. She reported her mental condition as being much better when taking her medication. (Id.) The ALJ followed the restrictions given by the state agency psychologists, although he did not specifically state that he was doing so.

The plaintiff asserts that the ALJ did not give sufficient weight to the opinion of Phil Pack, M.S., who had conducted a psychological examination of the plaintiff in October, 2004 in connection with a Worker's Compensation claim. (Tr. 422).

10

The date of this examination was well before the plaintiff's DIB and SSI applications on July 27, 2005 (Tr. 15), although the plaintiff alleged an onset date of January 15, 2004.  In any case, the Pack report was not submitted to the ALJ until the oral hearing on August 16, 2007.  (Tr. 422).  The plaintiff described anxiety and depression as well as some auditory hallucinations, but admitted that she had been non-compliant with treatment referrals and medications.  (Tr. 423).  She lived with her parents, drove on a regular basis around the home, helped out with chores at her mother's discretion, had some friends and managed her own bank account without difficulty.  Mr. Pack found her overall mood to be pleasant and friendly.  (Tr. 424-5). She was reporting only "intermittent" symptoms.  (Tr. 425).  Testing showed an average IQ, with a high school reading ability, and the results on a Mini Mental Status Examination (MMSE) was normal.  Her scores on the Symptom Check List were elevated in several areas, and on a test called the Derogatis Psychiatric Rating Scale (DPRS) her mood was noted to be euthymic currently "but she certainly has a fairly clear history of mood cycles and psychotic symptoms."  (Tr. 426).  Mr. Pack did not list any specific functional restrictions, but diagnosed a Class III impairment in activities of daily living, social functioning, concentration, and adaptation using the 5th and 3rd editions of the American Medical Association's <u>Guides to the Evaluation of Permanent Impairment</u> (<u>Guides</u>).  (Tr. 428).

      The plaintiff points out on appeal that a Class III impairment is defined in the AMA <u>Guides</u> as a "moderate impairment" and as representing an impairment level

08-178  April Spurlock

that is "compatible with some, but not all, useful functioning." Id. at 363. The plaintiff asserts that these limitations should have equated to "moderate" mental restrictions in all areas, but since such a hypothetical question was not presented to the VE, it is not known whether the plaintiff would have been precluded from all work activity. The court finds this argument unpersuasive.

As a consultative examiner, the opinion of Mr. Pack was not entitled to the deference due to a treating source. Moreover, in a recent decision, the Sixth Circuit has noted that an ALJ is not required to explicitly state his reasons for rejecting a consultative examiner as he must do when discounting the opinion of a treating source. Smith v. Commissioner of Social Security, 482 F.3d 873, 876 (6th Cir. 2007). In the present case, although the ALJ failed to provide any meaningful discussion of the Pack report, his failure to do so is not reversible error. The report was a one-time examination which was not relevant to the plaintiff's later SSI application, and, although it does cover a period of time relevant to her DIB application, it still does not contain any specific functional restrictions which are patently inconsistent with the state agency reviewers whose limitations were accepted by the ALJ. All of these sources agree that the plaintiff had no more than moderate impairments. Since Mr. Pack did not complete a detailed assessment, imputing moderate limitations into every single area contained on the detailed form completed by the state agency sources would be purely speculative. Moreover, it is noteworthy that the plaintiff subsequently reported to her treating psychologist

08-178  April Spurlock

that her condition had improved on medication, which was not the case at the time of the Pack examination.  Therefore, no good purpose would be served by remanding the case for additional consideration.

It is also noteworthy that the plaintiff does not directly attack the failure to adopt the treating psychologist's opinion. She does suggest, somewhat tangentially, that Mr. Pack had performed some psychological testing, which might undermine the ALJ's statement that Dr. Knox's limitations were not supported by any objective findings.  However, as previously noted, most of the actual testing conducted by Mr. Pack did not show any remarkable abnormalities, and tests such as the MMSE and DPRS are instruments in which the subject self-reports symptoms.  5 Robert K. Ausman & Dean E. Snyder, Medical Library (Lawyers Edition), § 8:76 (1990).  Nor is Mr. Pack's report consistent with the "marked" restrictions listed by Dr. Knox.  Therefore, the Pack report provides little basis to undermine the ALJ's rationale, in any case.

The decision will be affirmed.

This the 19th day of August, 2009.



Signed By:
G. Wix Unthank
United States Senior Judge